IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:20-CV-119-D

PRINSEZ TEEL,

        Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND
RECOMMENDATION

This matter is before the court on the parties' cross-motions for judgment on the pleadings
[DE-18, -20] pursuant to Fed. R. Civ. P. 12(c). Claimant Prinsez Teel ("Claimant") filed this action
pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her
application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing
responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully
reviewed the administrative record and the motions and memoranda submitted by the parties, it is
recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's
Motion for Judgment on the Pleadings be denied, and the case be remanded to the Acting
Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 30,
2018, alleging disability beginning April 16, 2018. (R. 15, 177–84). Her claim was denied initially
and upon reconsideration. (R. 15, 70–100). A hearing before the Administrative Law Judge
("ALJ") was held on September 17, 2019, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 30–69). On December 27, 2019, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–29). On April 22, 2020, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ committed the following errors: (1) failing to address Claimant's disability rating from Veteran's Affairs (the "VA"), (2) finding Claimant's mental impairments were nonsevere, (3) finding Claimant capable of medium work contrary to the opinion evidence from Claimant's doctors, and (4) failing to obtain testimony from a vocational

3

expert to support the conclusion that Claimant can perform her past relevant work. Pl.'s Mem. [DE-18-1] at 10–23.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date of April 16, 2018. (R. 17). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease and asthma and the nonsevere impairments of migraines, unspecified sleep wake disorder, depression, anxiety, and posttraumatic stress disorder. (R. 17–18). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following limitations:

> The claimant can occasionally operate foot controls. She should avoid concentrated exposure to pulmonary irritants. The claimant can frequently kneel, crouch, or crawl. She can frequently climb ladders, ropes, scaffolds, stairs, and ramps. The claimant can occasionally stoop.

(R. 19–24). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence. (R. 21). At step four, the ALJ

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

concluded Claimant had the RFC to perform the requirements of her past relevant work as a procurement service manager and a contract administrator. (R. 24–25).

## V. DISCUSSION

### A.   Claimant's 100% VA Disability Rating

Claimant contends that the ALJ erred in failing to sufficiently address her 100% VA disability rating, specifically by not indicating the weight, if any, given to the VA's determination and the justification for the weight assigned. Pl.'s Mem. [DE-18-1] at 10–11. Defendant argues there was no error because the ALJ is not required to provide an analysis of a decision made by any other governmental agency about whether a claimant is disabled. Def.'s Mem. [DE-21] at 4–5.

The ALJ acknowledged that Claimant had a service connected disability but did not indicate what, if any, weight was given to that disability determination or provide any analysis as to how it was considered. (R. 22). In *Bird v. Commissioner of Social Security Administration*, the Fourth Circuit found that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." 699 F.3d 337, 343 (4th Cir. 2012) (citation omitted). "Thus, . . . in making a disability determination, the SSA must give substantial weight to a VA disability rating" unless the record clearly demonstrates that a lesser weight is appropriate. *Id.* ("[B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability . . . an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

Subsequent to *Bird*, the SSA amended its regulations to provide for claims such as this one, filed on or after March 27, 2017, that "[d]ecisions by other governmental agencies" are "inherently neither valuable nor persuasive" and the SSA "will not provide any analysis about how we

5

considered such evidence in our determination or decision . . . ." 20 C.F.R. § 404.1520b(c)(1).

The regulations further provide:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . — make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504. It is upon these regulations that Defendant relies to support the ALJ's decision, arguing it was enough for the ALJ to acknowledge the VA disability rating and the ALJ was not required to provide any analysis regarding the consideration of it.

Defendant's position was recently rejected by Judge Dever in the case of *Roberts v. Kijakazi*, No. 5:20-CV-204-D, 2021 WL 4066668 (E.D.N.C. Sept. 7, 2021). The record in *Roberts* contained evidence that the claimant had received a 100% disability rating from the VA. *See Roberts v. Kijakazi*, No. 5:20-CV-00204-D, 2021 WL 4074797, at *3 (E.D.N.C. July 31, 2021), *adopted by* 2021 WL 4066668. The ALJ noted that she fully considered the evidence but also stated that the SSA would not defer or give specific evidentiary weight to prior administrative findings or medical opinions, citing the above regulations. *Id.* at *4. In support of the ALJ's decision, the agency argued that the new regulations superseded the Fourth Circuit's decision in *Bird*. *Id.* Magistrate Judge Numbers, in a memorandum and recommendation to the district court, disagreed with the agency's position, reasoning that *Bird* "did not interpret a prior regulation,

6

alterable by SSA" but rather "followed a line of cases expounding on what an ALJ must do to enable a district court to conduct a meaningful review." *Id.* (citing *Rose v. Saul*, No. 7:19-CV-91-BO, 2020 WL 4740479, at *3 (E.D.N.C. Aug. 14, 2020); *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018) (holding the ALJ's failure to give "persuasive, specific, valid reasons" to assign less than substantial weight to another governmental agency's disability determination frustrated meaningful review)). The agency objected to the memorandum and recommendation arguing, among other things, that the ALJ had properly considered the VA's disability rating. *Roberts*, 2021 WL 4066668, at *1–2. Judge Dever, citing *Bird* and *Woods*, found that "Judge Numbers applied the proper legal standards and appropriately recommended a remand." *Id.*

Here, as in *Roberts*, the ALJ acknowledged evidence that Claimant had a service connected disability and stated that she considered the prior administrative medical findings or opinions but concluded she could not give any specific evidentiary weight to such evidence. (R. 23). As a result of the ALJ's failure to explain how she considered the VA disability rating, i.e., whether the rating was given less than substantial weight and, if so, why, the court is unable to conduct the requisite judicial review. *Roberts*, 2021 WL 4066668, at *1–2 (citing *Woods*, 888 F.3d at 692–93; *Bird*, 699 F.3d at 343). Accordingly, it is recommended that this matter be remanded for further consideration of the Claimant's VA disability rating in conformity with the Fourth Circuit's decisions in *Bird* and *Woods*.

## B.    Claimant's Mental Impairments

Claimant contends the ALJ erred in finding her mental impairments were nonsevere. Pl.'s Mem. [DE-18-1] at 11–13. Defendant argues that substantial evidence supports the ALJ's evaluation of the functional limitations caused by Claimant's impairments. Def.'s Mem. [DE-21] 5–7.

7

At step two the ALJ must consider the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1522. Examples of "basic work activities" related to mental ability include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The special technique described above is applied in evaluating mental impairments. 20 C.F.R. § 404.1520a(a). If a claimant's degree of limitation in the four functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself) is "none" or "mild," the impairment(s) are generally determined to be nonsevere unless other evidence indicates a more than minimal limitation in the ability to do basic work. *Id.* § 404.1520a(d)(1).

"As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process[.]" *Pittman v. Astrue*, No. 5:08-CV-83-FL, 2008 WL 4594574, at *4 (E.D.N.C. Oct. 10, 2008). Thus, any error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps). The burden of proof and production during the second step rests on the claimant. *Pass*, 65 F.3d at 1203.

8

The ALJ considered Claimant's mental impairments of depression, anxiety, and PTSD at step two as follows:

> The claimant's medically determinable mental impairments of depression, anxiety, and posttraumatic stress disorder considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. The claimant reported that she completed high school, got a bachelor's degree, and master's degree. She also obtained her Ph.D. in strategic leadership in May of 2019. The claimant also has her driver's license and can drive. The claimant was enlisted in the Air Force for over 20 years and retired from service. She is able to attend to her persona[l] care, shop online, and handle her financial matters. She needs reminders to take her medication and to go to her appointments. The undersigned finds that the claimant has mild limitations in understanding, remembering, or applying information.
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant alleged that she has problems interacting with others. She has anxiety and depression and it makes her terse and short with people. She does not have much patience due to her pain. The claimant does get help from family and friends with household chores. She goes out to eat, and she spends time with others by phone and in person visits. The claimant also testified that she no longer goes to church every Sunday, but she goes once a month now. The undersigned finds that the claimant has mild limitations in interacting with others.
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation. The claimant testified that she obtained her Ph.D., in May of 2019. She testified that it took her 3.5 years to complete her doctorate degree. The claimant has a valid driver's license, is able to shop online, and handle her financial matters. However, she has anxiety and depression that causes crying spells and a loss of concentration. She sometimes cannot complete projects and she feels overwhelmed. She also does not have much patience due to her pain. She has a short attention span, she sometimes gets confused by written instructions, and does not handle stress or changes in routine well. She is able to follow written instructions. The undersigned finds that the claimant has mild limitations in concentrating, persisting, or maintaining pace.

9

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant testified that she is able to attend to her personal care. She can go shopping online and handle her financial matters. Recently she has been getting help from people with chores around the house. She is able to drive and go out to eat and run errands. She goes to church once a month. The claimant completed high school, obtained a bachelor[']s degree and a master's degree. She also completed her Ph.D., in May of 2019. However, with some consideration of the consultative examiner findings, the undersigned finds that the claimant has mild limitation in adapting or managing herself.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

(R. 18–19). The ALJ also discussed Claimant's mental impairments in the RFC determination, summarizing her hearing testimony and mental health treatment and weighing opinions from an examining psychological consultant and a state agency non-examining psychological consultant. (R. 22–24). The ALJ concluded that while Claimant had some anxiety and memory deficits, she generally had normal mental status examinations with good benefit from medications, she was "able to pursue normalcy by 'getting out' and 'exercising daily,'" she was able to complete a Ph.D. program, and her treatment did not rise to a level that supported significant mental limitations in the workplace. (R. 23–24).

The ALJ's own findings at step two contradict her conclusion that Claimant's mental impairments were nonsevere. The Fourth Circuit has explained that an "impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Triplett v. Saul*, No. 19-2415, 2021 WL 2580589, at *2 (4th Cir. June 23, 2021) (quoting *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)). In the functional area of interacting with others, the ALJ noted that Claimant has problems

10

interacting with others, her anxiety and depression make her terse and short with people, she does not have much patience due to her pain, and she has reduced her church attendance from weekly to once a month. (R. 18). In the area of concentrating, persisting, or maintaining pace the ALJ noted Claimant has anxiety and depression that causes crying spells and a loss of concentration, she sometimes cannot complete projects and she feels overwhelmed, she also does not have much patience due to her pain, she has a short attention span, she sometimes gets confused by written instructions, and she does not handle stress or changes in routine well. *Id.* It is unclear how such limitations would have no more than a minimal effect on Claimant's ability to perform basic work activities. 20 C.F.R. § 404.1522 (listing basic work activities that include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting). The court is unable to trace the ALJ's reasoning in concluding that Claimant's mental impairments of depression, anxiety, and PTSD were nonsevere.

Given that this matter requires remand to address the ALJ's error in consideration of the VA's disability determination, the undersigned declines to consider whether the error at step two was harmless. The ALJ's consideration of the VA's disability determination may also impact the ALJ's decision regarding the severity of Claimant's mental impairments where the VA assessed Claimant with a 70% disability rating for anxiety. Furthermore, had the ALJ determined Claimant's ability to concentrate, persist, or maintain pace was even moderately impaired, it would have likely resulted in non-exertional limitations in Claimant's RFC that may preclude her ability to perform her past relevant work that was categorized as "skilled." *See* 20 C.F.R. § 404.1568 ("skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity"); *Rowe v. Saul*, No. 3:18-CV-00340-KDB, 2019 WL 5957214, at *3 (W.D.N.C. Nov.

11

12, 2019) (noting the ALJ's conclusion that "the cumulative effects of the claimant's mental impairments and associated moderate limitation in concentration, persistence, and pace prevent him from performing the highly detailed and complex tasks required of "skilled" work but does not prevent him from simple, routine and repetitive tasks involving occasional decision-making."). Accordingly, the ALJ should reconsider the severity of Claimant's mental impairments on remand.

## C. The Opinion Evidence

Claimant contends the ALJ erred in finding her capable of performing medium exertion work by relying on the opinion of non-examining agency consultants while ignoring or dismissing opinion evidence supporting a more restrictive RFC. Pl.'s Mem. [DE-18-1] at 13–22. Defendant argues the ALJ's RFC finding is supported by substantial evidence. Def.'s Mem. [DE-21] at 7–15.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3).

Because Claimant protectively filed her application on January 30, 2018, 20 C.F.R. § 404.1520c, which applies to claims filed on or after March 27, 2017, governs how the ALJ considers the medical opinions in Claimant's case. That regulation provides the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective

12

medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 404.1520c(a). The regulations require the ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." *Id.* § 404.1520c(b). However, when a medical source provides multiple opinions, the ALJ may use a single analysis to evaluate all the opinions from a single source, and the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

### 1. Dr. Mackie's Opinion

The record contains a letter dated March 30, 2018 from Dr. Crystal Mackie, a primary care physician, which stated:

> Ms. Walker [now Teel] has a history of degenerative disc disease in her lumbar spine with radicular pain, (ICD-10 Diagnosis Code MS1.16 intervertebral disc disorders w radiculopathy, lumbar region), that radiates down her lower extremities intermittently. Her pain has been present since 2013 and has gradually progressed causing her increasing difficulty with completing her daily activities of living. Ms. Walker has difficulty with prolonged sitting as it worsens the radicular pain that radiates down her lower extremities causing severe pain and weakness in her lower

13

extremities. She also has increase lower back pain with prolonged standing and this pain tends to take several days to resolve which causes difficulties with dressing, walking, getting to and from work, which then causes anxiety due to her having to miss work. Patient states that increases in her back pain secondary to prolonged to sitting or standing can cause her complete inability to complete her daily actives again. Her degenerative disc disease can be controlled by physical therapy intermittently, some medicinal therapies, such as, in her case, prolonged sitting and prolonged stagnant standing. There is little likelihood that she will have a full or partial recovery from this, there is only chronic management and avoidance of triggers to decrease instances of flares and increased ability of Ms. Walker to complete her reasonability and daily actives of living. She has undergone physical therapy and evaluation by orthopedics. She has completed the physical therapy as prescribed and continues to utilize her TENS unit and the stretches and exercises as recommended by physical therapy. Particularly when she is in pain. She was given precautions to decrease her risk of progression of her degenerative disc disease such as lifting, prolonged standing and walking. In theory her pain would be better controlled and thus one less factor involved in her ability to complete her tasks.

(R. 298). The ALJ summarized what she characterized as Dr. Mackie's "physician's statement" as

follows:

On March 30, 2018, Dr. Crystal Mackie completed a physician's statement regarding the claimant. The claimant had a history of degenerative disc disease in her lumbar spine with radicular pain that radiates down to her lower extremities. She had difficulty with prolonged sitting and she had increased lower back pain that led to anxiety. The claimant's degenerative disc disease could be controlled by physical therapy intermittently and some medicinal therapies. She had already undergone physical therapy and utilized her TENS unit. She was also told to decrease lifting, prolonged standing, and walking (Ex. 1F).

(R. 21). The ALJ did not articulate how persuasive she considered Dr. Mackie's statement.

Defendant contends Dr. Mackie's statement was not a "medical opinion" because it reflected Claimant's subjective complaints about her condition rather than Dr. Mackie's opinion about Claimant's abilities and, as such, the ALJ had no obligation to explain whether she found the statement persuasive. Def.'s Mem. [DE-21] at 11–13. The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in," among other

14

things, the "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ." 20 C.F.R. § 404.1513(a)(2)(i).

Dr. Mackie's statement falls within the regulation's definition of medical opinion because it contains statements from Dr. Mackie regarding Claimant's limitations in her ability to sit, lift, stand, and walk. (R. 298). While the statement contains some reports by Claimant of her symptoms, it is not apparent that the entire statement is a reflection only on Claimant's subjective complaints rather than Dr. Mackie's opinion, where Dr. Mackie was Claimant's primary care physician and treated her for back pain among other conditions. (R. 372–78, 390–95, 407–14, 643–46). The ALJ's failure to evaluate the persuasiveness of Dr. Mackie's opinion was error. *See Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) ("In most cases, the ALJ's failure to consider a physician's opinion . . . or to discuss the weight given to that opinion will require remand.") (citations omitted). Defendant suggests several reasons why any error by the ALJ in failing to weigh Dr. Mackie's opinion is harmless. However, these reasons go to the persuasiveness of the opinion, and it is not within the court's authority to weigh an opinion in the first instance. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province—nor the province of the district court—to engage in these exercises in the first instance.") (internal citation omitted); *Bowen v. Berryhill*, No. 5:16-CV-65-FL, 2017 WL 1194462, at *4 (E.D.N.C. Mar. 31, 2017) ("[C]ourts may not accept appellate counsel's post hoc rationalizations for agency action," and "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by

15

the agency itself."), *adopted by* 2017 WL 4012675 (E.D.N.C. Sept. 12, 2017). Accordingly, it is recommended that on remand the ALJ articulate how persuasive she finds Dr. Mackie's opinion.

### 2. Dr. Lacroix's Opinion

Dr. Lacroix performed a consultative examination of Claimant on September 27, 2018, and issued a functional assessment and medical source statement on October 1, 2018, which the ALJ summarized and evaluated as follows:

> On September 27, 2018, Christopher E. Lacroix, M.D., conducted a consultative examination of the claimant. Upon examination, the claimant had diminished sensation in the left foot to moderate degree and mildly in the right foot. She was able to get off the examination without assistance. She was severely tender in the lumbar spine to palpation and mild sacroiliac tenderness. Her range of motion in the thoracolumbar spine was slightly reduced. The claimant had an x-ray of the lumbar spine that was negative. The claimant was diagnosed with lumbar degenerative joint disease, moderate to severe; bilateral sciatica, moderate to severe; and moderate persistent asthma. The claimant can stand and walk for at least 2-3 hours a day and there are restrictions with sitting. She can lift up to 15 pounds and walk/climb stairs without assistance. The claimant can occasionally to frequently bend, stoop, crouch, climb, kneel, or bounce. She had environmental limitations such as working around extreme temperatures, noxious smells/chemicals or dusts as these may exacerbate her asthma. She was also capable of driving (Ex. 3F). The undersigned finds the opinion of Dr. Lacroix to be unpersuasive as the opinion is not supported by examination or the cumulative medical records which were largely benign. X-rays showing a normal spine tends to contradict an opinion of moderate to severe degeneration of the spine. However, the residual functional capacity herein does include limited stooping and occasional use of foot controls, due to the objective examination findings.

(R. 23, 555–58). Claimant contends the ALJ's reasons for finding Dr. Lacroix's opinion unpersuasive—that the opinion is not supported by examination or the cumulative medical records which were largely benign and X-rays showing a normal spine tends to contradict an opinion of moderate to severe degeneration of the spine—are not supported by substantial evidence. Pl.'s Mem. [DE-18-1] at 15–17.

The ALJ's analysis ignores Dr. Lacroix's consideration of Claimant's 2017 MRI, which

16

showed degenerative changes of the lumbar spine at L4-5 and L5-S1 with mild left foraminal narrowing at these levels and gluteus medius and gluteus maximus tendinosis. (R. 545–47, 555). The radiologist recommended "clinical correlation . . . of patient's symptoms to determine significance of imaging findings." (R. 545). Thus, in light of the MRI, the normal x-ray was not substantial evidence upon which to discount Dr. Lacroix's opinion that Claimant's degeneration of the spine was moderate to severe. *Cf. Graham v. Colvin*, No. CV 9:14-4348-RBH-BM, 2015 WL 13227642, at *5 (D.S.C. Dec. 4, 2015) (noting an x-ray showed no abnormality, while an MRI showed marked tendonitis and a partial tear of the rotator cuff). The ALJ also found Dr. Lacroix's opinion was not supported by examination, but Dr. Lacroix noted on examination that Claimant had some limited range of motion in her thoracolumbar spine, a moderate degree of diminished sensation in her left foot and a mild degree of diminished sensation in her right foot, and severe tenderness to palpation of the lumbar spine with mild SI tenderness. (R. 557–58, 560). These examination findings arguably offer support for Dr. Lacroix's opinion that Claimant is limited in her ability to stand, walk, and lift, and the ALJ does not explain his statement that Dr. Lacroix's opinion is not supported by examination. Thus, the ALJ has failed to build the requisite "accurate and logical bridge" from the evidence to her conclusion, *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016), and the court cannot find Dr. Lacroix's examination provides substantial evidence upon which to discount his opinion. Based on these errors, the ALJ should reconsider Dr. Lacroix's opinion and better explain her determination regarding its persuasiveness on remand.

**3. Dr. Radson**

Dr. Radson conducted a psychological evaluation of Claimant on October 31, 2018, which the ALJ summarized and evaluated as follows:

On October 31, 2018, Robert D. Radson, M.S., and Jerome B. Albert, Ph.D.,

17

conducted a psychological evaluation of the claimant. At the examination, the claimant appeared anxious and was rubbing her hands. The claimant reported that she could not return to work because of the commute. She reported that she completed her bachelor's degree and master's degree with an above 3.00 grade point average. She also reported that she was in a doctorate program and to complete in May of 2019 with a 3.8 GPA. She reported that she may go to bed between 10:00 p.m. to 3:00 a.m. depending on her school work. She reported that she was working in a restaurant and she had no difficulty with supervisors or the boss when she worked. She was also in the Air Force. The claimant appeared anxious and gave smiles. She was oriented to time, place, person, and purpose. Her memory appeared intact and she had insight into her mental problems and life situation. The claimant's intellectual ability was estimated to be within the average range or above. The claimant was diagnosed with generalized anxiety disorder, posttraumatic stress disorder, and unspecified sleep-wake disorder. It was determined that the claimant could understand and follow simple instructions as well as some complex instructions, could sustain attention to perform simple repetitive tasks but may have difficulty with complex tasks, and would have difficulty tolerating the stress and pressures associated with a typical workday. She may have difficulty relating to coworkers and supervisors in a typical work setting (Ex. 4F). The undersigned finds that this opinion is not persuasive. While the examination showed that the claimant had some anxiety and memory deficits, the balance of the examination was within normal limits and other records show a normal mental status examination with good benefit from medications (Ex. 7F/34, 36, 43, 47, 51, 60, 67, 69, 75). While on rare occasion she was fidgety and nervous, she was nonetheless able to pursue normalcy by "getting out" and "exercising daily" (Ex. 10F/8, 11). Further, the claimant was able to complete a Ph.D. program after this examination, which contradicts a finding of significant memory deficits. The claimant received treatment to address life transition issues, but it did not rise to a level which supports significant mental limitation in the workplace.

(R. 23–24, 562–66). Claimant contends the ALJ disregarded the actual records in the file, did not mention the VA records at all when citing "other records" that showed a normal mental status examination and good benefit from medications, and cherrypicked or took evidence out of context. Pl.'s Mem. [DE-18-1] at 18–22. Given that Dr. Radford's opinion is with respect to Claimant's mental impairments, including her anxiety, and the ALJ's consideration of the VA's disability rating (a 70% rating for anxiety) may impact the ALJ's view on the persuasiveness of Dr. Radford's opinion, the ALJ should also reconsider Dr. Radford's opinion on remand.

18

## D.    Failure to Obtain Testimony from a Vocational Expert at Step Four

Claimant contends the ALJ erred in failing to obtain testimony from a vocational expert to support the conclusion that Claimant can perform her past relevant work. Pl.'s Mem. [DE-18-1] at 22–23. The regulations provide that in determining whether a claimant can perform past relevant work, the ALJ *will* ask the claimant for information about her past work and *may* consult a VE or other resources such as the Dictionary of Occupational Titles. 20 C.F.R. § 404.1560(b)(2); *see Mosley v. Saul*, No. 7:18-CV-197-RJ, 2019 WL 4688742, at *3 (E.D.N.C. Sept. 25, 2019) (citing *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (concluding that "vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work" and "is not required until step five when the burden shifts to the Commissioner, and then only when the claimant has nonexertional impairments . . . .") (citations omitted)).

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982).

Here, at the administrative hearing Claimant described her past relevant work as a procurement analyst and contract specialist, and the VE classified both jobs as sedentary and skilled. (R. 39–42, 66). The ALJ compared Claimant's RFC with the physical and mental demands

19

of Claimant's past work as actually performed and found that Claimant could perform those jobs despite the environmental and postural limitations included in the RFC. (R. 25). As explained above, the ALJ was not required to obtain VE testimony in evaluating whether Claimant can perform her past relevant work, and Claimant points to no requirements of her past relevant work that are precluded by her RFC as determined by the ALJ. Accordingly, the ALJ did not err at step four by failing to obtain VE testimony.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-20] be DENIED, and the matter be remanded to the Acting Commissioner for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **November 1, 2021** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

20

district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 1**⧸** day of October, 2021.

Robert B. Jones, Jr.
United States Magistrate Judge

21